G. M. WALDRIP et al., Plaintiffs,

v.

Jake L. HAMON et al., Defendants.

Civ. A. No. 3652.

United States District Court,

E. D. Oklahoma.

Feb. 8, 1954.

Fischl & Culp, Ardmore, Okl., for plaintiff.

Geo. N. Otey, Ardmore, Okl., for defendant.

WALLACE, District Judge.

Plaintiffs bring this action to recover damages for an alleged breach of contract by the defendant Jake L. Hamon. Defendant Hamon denies he breached the contract in issue and affirmatively asserts that plaintiff Waldrip refused to accept the performance called for by the contract.

The evidence indicates that on April 18, 1944, the plaintiff, G. M. Waldrip, and his wife, Helen E. Waldrip, executed an oil and gas lease in favor of Geo. D. Wilkes on 120 acres of land including the 40 acres here involved, a portion of the minerals to which are owned by the Waldrips subject to said lease.[1] This lease insofar as pertinent to the 40 acres in question was subsequently assigned to Stanolind Oil and Gas Company; and, was thereafter assigned by Stanolind to defendant Hamon. (The assignment to Hamon reserved an overriding royalty in favor of Stanolind.) After Hamon acquired said lease, Waldrip questioned the lease's validity due to an alleged breach of the implied covenant to protect against drainage. On September 9, 1952, Waldrip and Hamon entered into a written agreement settling their differences. This agreement provided in substance: (1) That Hamon would, on or before October 15, 1952, either commence a well and thereafter drill the same to the Goodwin Sands, or release said lease as to such acreage; and, (2) If Hamon elected to drill said well, he was to pay certain compensatory royalties to Waldrip; and, (3) Upon the commencement of said well the lease would be ratified. This agreement further provided:

"If Hamon drills a well on said lease acreage and does not thereafter, within a reasonable time but not exceeding ninety (90) days after the completion of said well, (unless such time be extended in writing by the parties hereto) commence the drilling of second well on said lease acreage to the Humphreys Sand or deeper, then Hamon will release oil and gas lease as to the Humphreys or 'B' Sand spacing and drilling unit (as fixed by the Corpo-

---

1. The original Waldrip lease covered the NW/4 of the SW/4; and, the S/2 of the SW/4 of Section 10, Township 2 South, Range 3 West, Carter County, Oklahoma. The 40 acres here involved is the NW/4 of the SW/4 of such conveyance.

ration Commission of the State of Oklahoma) upon which no well has been drilled down to and through the depth at which the Humphreys or 'B' Sand is found in said area upon demand of Waldrip when Waldrip is able to get a well drilled thereon. In lieu of said release and upon Waldrip's request, Hamon will assign his interest in the lease covering said part of lease acreage to the person who is going to drill a well thereon."

On September 15, 1952, the parties entered into an amendment to the compromise agreement which stated:

"By way of clarifying and explaining Paragraph 4, page 3 of the contract dated September 9, 1952, by and between G. M. Waldrip and Helen E. Waldrip, husband and wife, of Healdton, Oklahoma, and Jake L. Hamon, of Dallas, Texas, it is agreed that if such well as contemplated in Paragraph 1 of said contract is completed in the Goodwin Sands, that such completion will hold the lease acreage as to the Goodwin Sands. If such well is completed in the Humphreys Sand, then such completion will hold the lease insofar as the 20 acres allotted to such well is concerned, and in the event Jake L. Hamon elects not to commence the drilling of a second well on said lease acreage to the Humphreys Sand, then the assignment by Jake L. Hamon will convey only the 20 acres not allotted to the first well so drilled and such assignment will convey the Humphrey Sand only."

On October 7, 1952, a modification contract was entered into which stated in part:

"4. If Hamon drills on said lease acreage and does not thereafter within a reasonable time, but not exceeding ninety (90) days after the completion of said well (Unless said time be extended in writing by the parties hereto), commence the drilling of a second well on said lease acreage to the Humphreys Sand or deeper, then Hamon will, if Waldrip can show that he has a bona fide offer from a third party to drill such well to the Humphreys Sands, release said oil and gas lease as to the twenty (20) acres not allotted to the first well so drilled and such release shall be to the Humphreys Sands only. In lieu of said release and upon Waldrip's request, Hamon will asssign his interest in the lease covering said part of lease acreage to any person that Waldrip might get to drill a well thereon."

The evidence further indicates that Hamon, within the allotted time, began the first well called for in the agreement. This well was drilled down to the Goodwin Sand but was not completed therein as such sand failed to show sufficient oil; however, this well was completed in the shallower Humphreys Sand and placed on production.[2] A second well was not begun within 90 days of the completion of the first well;[3] and, on June 30, 1953, the Peppers Refining Company by letter agreed to drill to completion a Humphreys Sand well at the permitted location.[4] On July 7, 1953, Peppers advised Hamon of its agreement

2. On April 30, 1952, the Oklahoma Corporation Commission identified and established 20-acre spacing units as to the Humphreys Sands; and, a 40-acre spacing unit for the Goodwin Sands. Under such order the Humphreys Sand common source of supply is located from 5,400 to 6,400 feet; and, the Goodwin common source of supply from 6,250 to 7,000 feet. The Corporation Commission permitted this well drilled by Hamon to serve as a proper Humphreys Unit location as to the E/2 of the NW/4 of the SW/4.

3. Although not material to this litigation, technically there exists some dispute as to whether the first well drilled complied with the contract inasmuch as it was not completed in the Goodwin Sand. However, apparently Waldrip would have been satisfied had the second well been drilled within the 90 days.

4. This letter, dated June 30, 1953 stated in part: "We will drill a Humphreys Sand

with Waldrip and asked for an assignment. On July 15, 1953, Hamon tendered an assignment "insofar as the said lease covers the Humphreys Sands and Humphreys Sands only." On July 20, 1953, Hamon was asked to sign a revised assignment which conveyed "insofar as the said lease covers rights down to and including all of the Humphreys Sands", which Hamon refused.

▆▆▆ The pivotal issue before the Court is whether Hamon in tendering an assignment "to the Humphreys Sands and Humphreys Sands only" discharged his contractual duty owed Waldrip. After very careful consideration, the Court has concluded that the assignment so tendered did not comply with Hamon's contractual promise. There is no substance to defendant's argument that the contract, and modifications thereto, only had the intention of binding Hamon to assign or release "to the Humphreys Sands and Humphreys Sands only", exclusive of all upper sands. The contracting parties had no thought of reserving the sands above the Humphreys Sands, in using the phrase "to the Humphreys Sands only" but meant to include down to and including the Humphreys Sands, excluding the deeper Goodwin Sands. The Court believes the contract is unambiguous on this point and that as a matter of contractual construction the intent of the parties can be determined from within the four corners of the agreement. However, even if this agreement be deemed ambiguous, thus making admissible parol testimony for purposes of explanation, the parol evidence adduced at the time of trial further indicates the parties only intended to differentiate between the Humphreys Sands and the deeper Goodwin Sands.

Inasmuch as the Court is of the opinion defendant Hamon has breached his contract with plaintiff Waldrip it will be necessary for a further hearing at which time the question of damages will be considered.[5]

well at the prescribed location within this unit. This therefore is to agree with you that within 120 days following the delivery to us of a recordable assignment of the presently subsisting oil and gas mining lease insofar as it covers the lands above described, subject only to an overriding royalty of $\frac{1}{16}$th of $\frac{7}{8}$ths to the Stanolind Oil & Gas Company and $\frac{1}{32}$nd of $\frac{7}{8}$ths to Julius Lederman, we will commence and thereafter diligently drill to completion a Humphreys Sand well at the permitted location in the above described drilling and spacing unit."

5. It was understood at the time of trial that only the issue of liability would be considered; and, if it proved necessary, damages would be considered in a subsequent hearing.